**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Michelle C., on behalf of Alexander M.,**

**Plaintiff,**

**-against-**

**Commissioner of Social Security,**

**Defendant.**

**1:25-cv-06083 (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Michelle C., on behalf of Alexander M., deceased ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") that denied Alexander M.'s application for Disability Insurance Benefits ("DIB"). (Compl., ECF No. 1.) Now before the Court is Plaintiff's motion to reverse the decision of the Commissioner and remand this action for further administrative proceedings. (Pl.'s Mot., ECF No. 15.) For the reasons set forth below, Plaintiff's motion is GRANTED and the decision of the Commissioner is remanded for further administrative proceedings.

## BACKGROUND

### I. Procedural Background

Alexander M. filed an application for DIB on March 27, 2018, with an alleged onset date of December 25, 2014. (Administrative R., ECF No. 10 ("R."), 721, 736.) His date last insured was

December 31, 2020.[1] (R. 2617.) The Social Security Administration ("SSA") denied Alexander M.'s application on June 4, 2018. (R. 737.) On August 8, 2018, he filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 742.) Alexander M. appeared for a hearing on October 1, 2019, but elected to postpone the hearing to obtain counsel. (R. 713-20.) Administrative hearings were then held on January 7, 2020 and via telephone on April 6, 2021 before ALJ Janet McEneaney, during which Alexander M. was represented by counsel. (R. 618-712.) In a decision dated October 7, 2021, ALJ McEneaney found Alexander M. not disabled. (R. 588-610.) Thereafter, Alexander M. requested review of the ALJ's decision from the Appeals Council. (R. 912-13.) The Appeals Council denied the request on March 28, 2023. (R. 1-4.)

On March 28, 2023, Alexander M. filed an action in this Court for review of the Commissioner's decision. (R. 2592-94.) On November 5, 2023, Alexander M. passed away. (R. 2616.) On December 1, 2023, Magistrate Judge Lehrburger entered a Stipulation and Order remanding the action to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of Court entered judgment. (R. 2602-04.) On December 20, 2023, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ. (R. 2605-08.)

In September 2024, Michelle C., the mother of Alexander M.'s daughter, was substituted as claimant. (R. 2850, 2856.) On March 25, 2025, an administrative hearing was held, via telephone, before ALJ Raymond Prybylski. (R. 2540-52.) In a decision dated April 7, 2025, ALJ Prybylski found Alexander M. not disabled. (R. 2616-48.) The Appeals Council did not assume

[1] To qualify for DIB, a claimant must be both disabled and insured for benefits. 42 U.S.C. § 423(a)(1)(A) & (C); 20 C.F.R. §§ 404.101, 404.120 & 404.315(a). The last date a person meets these requirements is commonly referred to as the date last insured.

jurisdiction over the case, making ALJ Prybylski's decision the Commissioner's final decision. *See* 20 C.F.R. § 404.984. This action followed.

## II. Non-Medical Evidence

Born on February 27, 1979, Alexander M. was 35 years old on the alleged onset date and 41 years old on the date last insured. (R. 721, 2635.) Alexander M. had at least a high school education and no past relevant work. (R. 2635.) Alexander M. passed away on November 5, 2023. (R. 2616.)

## III. Medical Evidence Before the ALJ

### A. Medical Records

The Court adopts the summary of the medical records set forth by Plaintiff (*see* Pl.'s Mem., ECF No. 16, at 13-23), which the Commissioner does not contest (*see generally*, Comm'r Br., ECF No. 19) and summarizes herein the medical evidence to the extent necessary to address Plaintiff's arguments, which primarily relate to Alexander M.'s mental impairments and the psychiatric opinion evidence in the record. (*See infra*, Discussion Section I.)

On February 13, 2018, Alexander M. presented to the emergency room requesting detox and rehab, stating that "[he] felt like [he was] killing himself with alcohol." (R. 1182.) Alexander M. reported a history of treatment for depression. (*Id.*) The following day, Alexander M. again presented to the emergency room seeking help with substance abuse. (R. 1179-82.) Alexander M. was accepted for Domiciliary Substance Abuse Rehabilitation Treatment to begin the next day on February 15, 2018. (R. 1181.) Alexander M. attended the program for 21 days, during which time he engaged in group and individual therapy. (*See, e.g.*, R. 1192, 1327, 1336.) During an initial substance abuse evaluation on February 15, 2018, Alexander M. reported not doing well after

dropping out of Hunter College. (R. 1399.) On February 27, 2018, a treatment plan update indicated that Alexander M.'s response to substance abuse treatment had been fair bordering on poor and that Alexander M. had some adjustment problems and was not getting along with fellow veterans. (R. 1327; *see also* R. 1349, 1354, 1367, 1384.) Alexander M. was discharged on March 8, 2018. (R. 1198-99, 1289.)

On March 12, 2018, Alexander M. was admitted to the Psychosocial Residential Rehabilitation Treatment Program ("PRRTP") at the St. Albans VA Medical Center. (R. 1188, 2135.) On March 15, 2018, Alexander M. was seen for an initial mental health assessment conducted by a psychology extern who was supervised by the military sexual trauma ("MST") coordinator. (R. 1171-72, 2125-30.) The assessment noted that Alexander M. met the criteria for a post-traumatic stress disorder ("PTSD") diagnosis and had indicated in a questionnaire that he had experienced MST. (R. 1172.) A mental status evaluation documented anxious mood and full affect. (R. 1174)

On March 19, 2018, Alexander M. underwent a psychosocial/initial evaluation with Dr. Michele Goldman, stating that he needed help with depression and drug addiction. (R. 1188-97; *see also* R. 2104-09.) A mental status evaluation indicated that his mood was anxious and dysphoric, affect was congruent with mood, and he had impaired remote memory. (R. 1194.) A screening test for PTSD was positive. (R. 1196-97.) Alexander M. continued to attend group and individual therapy. (*See, e.g.*, R. 1155-56, 2077-82, 2086-95, 2099, 2109-23, 2131-58.) On April 4, 2018, attending physician Dr. Towey noted that Alexander M. had increased anxiety, had been involved in a verbal incident with another veteran, and was having difficulty dealing with the

normal scope of everyday events. (R. 2075.) Dr. Towey added a medication to address anxiety and recommended that he take it before riding the train, which was a trigger for him. (*Id.*)

On April 19, 2018, Dr. Goldman completed an updated treatment plan, noting that Alexander M.'s mood was anxious and dysphoric. (R. 1151-55.) The treatment plan included continuing psychiatric and group and individual psychotherapy two times per week. (R. 1155; *see also* R. 1146-47, 1149-51, 2016-22, 2024-27, 2030-40, 2044-62, 2070-77.)

On or about May 7, 2018, Alexander M. was discharged from the PRRTP at St Albans. (R. 1981, 1992, 2007.) A discharge note indicates that he would continue outpatient treatment with the VA and was referred for another substance abuse program. (R. 2001, 2003) Alexander M. entered the shelter system on May 22, 2018. (R. 1992.) On May 24, 2018, he was admitted to a transitional housing program for veterans. (R. 1991.)

On July 10, 2018, Alexander M. met with a social worker at the Harlem VA clinic and reported that he had been involved in several verbal altercations at a veteran's shelter, broke a door and had a physical altercation with another veteran. (R. 1703-16.) Alexander M. reported low frustration tolerance and was scared of hurting someone. (R. 1703-04.) Alexander M. left the shelter and was street homeless until July 27, 2018, when he was admitted to Patriot First, a residential treatment program in Brooklyn. (R. 1692, 1716.)

On August 7, 2018, Alexander M. saw Dr. Sarah Michael and Dr. Mario Eakin for an initial outpatient mental health evaluation. (R. 1938-47.) Alexander M. presented with low mood, low energy, intermittent anhedonia and sleep disturbances and it was noted that he had difficulty with anger and irritability. (R. 1942.) Alexander M. continued to see Dr. Michael and Dr. Eakin on an approximately monthly basis, although he did not always show up for his appointments. (R.

1609.) In November 2018, Alexander M. moved out of Patriot First into permanent housing. (R. 1618.) A psychiatry outpatient note from November 14, 2018 indicated that Alexander M. had been doing better but had decided to move out of Patriot First because he was having trouble with his roommates. (R. 1615-18.) A follow-up note from December 2018 indicated that Alexander M. was intermittently adherent to medications and was very motivated for individual therapy. (R. 1609.) Future treatment goals included optimizing his medication regime, assisting him in maintaining sobriety and referring him for therapy. (*Id.*)

On June 11, 2019, Alexander M. visited the emergency room asking for psychiatric medication for anger. (R. 1581-83.) Alexander M. reported that, during a class the prior week, another student said that the question he asked was stupid, and Alexander M. responded by throwing his desk/chair down and away from him and storming out of the room while cursing out the other student. (R. 1581.) Alexander M. reported compliance with psychiatric medications, but a chart reviewed indicated his last refill was in January 2019. (*Id.*) Dr. Gonzalez-Aviles diagnosed adjustment disorder with depressed mood and restarted Alexander M. on Depakote for anger and irritability. (R. 1580.) Dr. Gonzalez-Aviles encouraged Alexander M. to contact Dr. Chang for follow-up as soon as possible. (R. 1579.) In the interim, Alexander M. was referred to the walk-in clinic. (R. 1577-79.)

Alexander M. saw Dr. Chang on June 24, 2019. (R. 1572-74.) Alexander M. reported feeling sorry about his outburst at school. (R. 1572.) He stated that he found medication helpful but did not want to use it long term. (R. 1573.) Alexander M. stated that he was willing to adhere to a treatment plan to reduce irritability. (*Id.*) Alexander M. noted poor sleep, good appetite and

irritable mood. (*Id.*) Dr. Chang adjusted Alexander M.'s medications and provided supportive psychotherapy. (R. 1574.)

On September 13, 2019, Alexander M. saw Dr. Chang as a walk-in. (R. 1560-62.) Alexander M. reported that events at school had calmed down and he was doing well, taking medication, though he was breaking the Depakote in half and noted only occasional use of Seroquel. (R. 1560-61.) Dr. Chang reminded him about the benefits of regular adherence. (R. 1561.) Dr. Chang adjusted Alexander M.'s medication and scheduled him to return to the clinic in November. (R. 1562.)

On November 8, 2019, Alexander M. saw Dr. Chang for medication management. (R. 2231-33.) Alexander M. reported feeling well, and denied anxiety or panic, but noted difficulties with his landlord and interpersonal conflict. (R. 2231.) Alexander M. also reported adhering to medication and that his medication was working well. (*Id.*) On mental status examination, speech was slightly pressured, insight and judgment were fair and attention and concentration were fair. (*Id.*) Alexander M. failed to show up for mental health appointments on November 18, 2019 and December 2, 2019. (R. 2227-28.) On December 5, 2019, Alexander M. met with a clinical psychologist regarding possible admission to a substance abuse outpatient program based on a referral from Dr. Chang. (R. 2226.) Alexander M. declined the program due to transportation costs. (*Id.*)

On December 6, 2019, Alexander M. saw Dr. Chang for a follow-up appointment. (R. 2211-13.) Alexander M. continued to note irritability and difficulty sleeping and stated that he would like more adequate treatment to reduce hostility and irritability, pursue treatment for PTSD and find "the core of what[] [was] wrong with [him]." (R. 2211.) Following a discussion of the benefits

of adjusting medication versus no adjustment, Dr. Chang adjusted Alexander M.'s medications and Alexander M. agreed to the current medication plan. (R. 2211-12.)

On January 23, 2020, Alexander M. presented to the emergency department for worsening anxiety and insomnia following some medical evaluations. (R. 2339.) He reported panic attacks and that his mood had been irritable. (*Id.*) The same day, clinical psychiatrist Dr. Peter Heinze examined Alexander M. and completed a disability benefits questionnaire related to Alexander M.'s VA benefits. (R. 2291-96.) Dr. Heinze noted that Alexander M. reported depression and anxiety which contributed to absenteeism and tardiness at a prior job and was the reason for his eventual dismissal. (R. 2296.) Alexander M. also reported that he achieved a 3.4 GPA when completing his associate's degree, which Dr. Heinze noted suggested an above average level of ability with no apparent compromise of his attention, concentration and comprehension, and, thus, he may be able to function in an occupational setting with more relaxed requirements, such as the ability to work from home. (*Id.*)

On August 12, 2020, Alexander M. missed a scheduled appointment with Dr. Chang. (R. 2435-36.) The following day, a nurse contacted him regarding the missed appointment. (R. 2435.) Alexander M. stated that he forgot, but he was doing okay. (*Id.*) Alexander M. reported "staying afloat" but that his sleep still was not good and he had anxiety when talking with neighbors. (*Id.*) He was not taking Depakote, Latuda or melatonin, because they did not "even take the edge off." (*Id.*) Alexander M. reported getting into a fight the prior month, to which the nurse suggested that taking his medications may have helped. (*Id.*) Alexander M. responded that it was not much of a difference and he learned his lesson and knew how to do things differently next time without the medication. (*Id.*) Alexander M. saw Dr. Chang again on August 17, 2020 for medication

management. (R. 2433-36.) Alexander M. reported that he was doing "OK," and was taking Seroquel and Hydroxyzine, but not the other medications, and noted fair appetite and mood. (R. 2433.) Dr. Chang adjusted provided supportive psychotherapy and adjusted his medications in response. (R. 2434.)

Alexander M. saw Dr. Chang again on September 14, 2020. (R. 2429-30.) Alexander M. reported drinking again and that he was considering rehab, but did not have time for an inpatient program. (R. 2429.) Alexander M. stated that he was taking his medications, which were effective, but he experienced fatigue during the day. (*Id.*) A mental status examination was largely unchanged with "ok" mood and fair insight and judgment. (*Id.*) Dr. Chang provided supported psychotherapy and continued Alexander M.'s medications. (R. 2430.)

During a telehealth visit with Dr. Chang on March 11, 2021, Alexander M. reported that he had an erratic sleep schedule, and that he continued to drink "as much as before." (R. 3130.) Alexander M. stated that he felt Seroquel was less effective and reported his appetite as fair. (*Id.*) Dr. Chang adjusted Alexander M.'s medications. (*Id.*)

**B. <u>Psychiatric Medical Opinions</u>**

On May 12, 2018, Alexander M. saw Dr. John Miller for a psychiatric consultative examination. (R. 2411-15.) Dr. Miller opined that Alexander M. had moderate limitations in interacting with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being, but no limitations in understanding, remembering, and applying simple or directions and instructions; using reason and judgment to make work-related decisions; maintaining personal hygiene and appropriate

attire; and being aware of normal hazards and taking appropriate precautions. (R. 2414.) Dr. Miller opined that Alexander M.'s difficulties were caused by psychiatric problems. (*Id.*)

On June 1, 2018, State agency psychological consultant Dr. D. Brown reviewed the record and opined that Alexander M. had mild limitations in understanding, remembering, or applying information, and adapting or managing himself and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (R. 726, 730-32.) Dr. Brown opined that Alexander M. retained the ability to meet the demands of unskilled, low contact work. (R. 732.)

On December 21, 2020, Dr. Chang completed a Medical Source Statement. (R. 2449-52.) Dr. Chang opined that Alexander M. would be absent from work about three times per month. (R. 2450.) Dr. Chang opined that Alexander M. had moderate loss in his ability to remember locations and work-like procedures; understand, remember and carry out very short, simple instructions; understand and remember detailed instructions; maintain regular attendance and be punctual; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places; use public transportation; and set goals or make plans independently of others. (R. 2451.)

Dr. Chang also opined that Alexander M. had a marked loss in his ability to carry out detailed instructions; maintain attention and concentration for extended periods (*i.e.*, two hour segments); sustain an ordinary routine without special supervision; deal with stress or semi-skilled and skilled work; work in coordination with or proximity to others without being unduly distracted; complete a normal workday or week without interruptions from psychologically

based symptoms; interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and respond appropriately to changes in a routine work setting. (R. 2451.) Dr. Chang found that Alexander M. had a moderate limitation in his activities of daily living; marked limitation in maintaining social functioning; frequent deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and repeated episodes of decompensation or deterioration in work or work-like settings which cause him to withdraw from such situations. (R. 2452.)

On March 29, 2021, Advanced Practice Registered Nurse ("APRN") Plageman completed a medical questionnaire regarding Alexander M.'s physical impairments. (R. 2453-58.) APRN Plageman stated that Alexander M. "per [patient]," he had constant pain severe enough to interfere with attention and concentration and a severe limitation in the ability to deal with work stress. (R. 2454.) APRN Plageman also opined that Alexander M. was likely to be absent from work more than three times per month. (R. 2458.)

## IV. The Administrative Hearings

Alexander M. first appeared for a hearing on October 1, 2019, which then was postponed to allow him time to obtain counsel. (R. 713-20.) Alexander M., represented by counsel, appeared on January 7, 2020 for the rescheduled hearing before ALJ Janet McEneaney. (R. 679-712.) Alexander M. testified that, in 2017, he stopped working as an after-school teacher because he could not handle the stress of the job and had not worked since. (R. 685-86). Alexander M. testified that he had PTSD and panic attacks and had trouble sleeping. (R. 689-704.)

Another hearing was held on April 6, 2021. (R. 618-78.) Alexander M. again testified that he had stopped working due to stress and testified that he had anxiety attacks three to four times per week. (R. 629, 641.) Two medical experts, orthopedic expert Dr. Kendrick and psychiatric expert Dr. Linda Miller, also testified at the April 6, 2021 hearing via telephone (R. 649-76.) Dr. Miller testified that Alexander M.'s impairments did not meet or medically equal a listed impairment. (R. 659.) Dr. Miller opined that Alexander M.'s impairments would not result in any mental limitations. (*Id.*)

Vocational expert ("VE") Josiah Pearson testified at a hearing on March 25, 2025. (R. 2546-50.) The ALJ first asked VE Pearson to assume a hypothetical individual with the same age, education and past work experience as Alexander M., who was limited to the full range of sedentary work except they could only occasionally push, pull, climb ramps or stairs; could never climb ladders, ropes or scaffolds; were limited to occasional stooping, kneeling, crouching and crawling; could never do any overhead reaching; was limited to simple tasks; and could tolerate no more occasional decision making or interaction with the public, coworkers or supervisors. (R. 2546-47.) VE Pearson testified that, based on those parameters, there were occupations available for an individual, including ticket checker (DOT No. 219.587-010), touchup screener (DOT No. 726.684-110) and document preparer (DOT No. 249.587-018). (R. 2547-48.)The ALJ then asked VE Pearson if his response would change if the need for a cane when walking was added. (R. 2548.) VE Pearson testified that it would not change his response. (*Id.*)

For a third hypothetical, the ALJ asked VE Pearson to assume the individual from the first hypothetical, with the further limitation that they could not tolerate any interaction at all with the public. (R. 2549.) VE Pearson again testified that this would not change his response. VE

Pearson also testified, in response to questions from the ALJ, that some level of inappropriate behavior with a supervisor may be tolerated, but insubordination would not be tolerated and after, at most, three occurrences an individual likely would be terminated. (R. 2549-50.) VE Pearson further testified that a limitation to never interacting with coworkers and supervisors would eliminate all of the jobs. (R. 2550.)

In response to a question about off-task tolerance from Alexander M.'s attorney, VE Pearson testified that there would be an erosion in the number of jobs around eight percent of time off task and at 15 percent or more of time off tasks all jobs would be eliminated. (R. 2550.) Regarding tolerance for unscheduled absences, VE Pearson testified that one unscheduled absence per month was the maximum that would be tolerated. (*Id.*)

**V. <u>The ALJ's Decision</u>**

Applying the Commissioner's five-step sequential evaluation, *see infra* Legal Standards, at step one, the ALJ found that Alexander M. had not engaged in substantial gainful activity from the alleged onset date of December 25, 2014 through his date last insured of December 31, 2020. (R. 2618.) At step two, the ALJ found that Alexander M. had severe impairments of cocaine use disorder, alcohol use disorder, bipolar II disorder, anxiety disorder, depressive disorder, post-traumatic stress disorder ("PTSD"), degenerative disc disease of the cervical, thoracic, and lumbar spine, degenerative joint disease of the left knee, and obesity. (R. 2619.) The ALJ also found that Alexander M. had non-severe impairments of sensorineural hearing loss, tinnitus and finger and arm pain. (*Id.*)

At step three, the ALJ found that Alexander M.'s impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings

1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina) and 1.18 (abnormality of a major joint in any extremity). (R. 2619-20.) With respect to Alexander M.'s mental impairments, the ALJ specifically considered Listings 12.04, 12.06 and 12.15. (R. 2620.) As to paragraph B criteria,[2] the ALJ found that Alexander M. had a mild limitation in understanding, remembering or applying information and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 2620-21.) The ALJ then addressed paragraph C criteria, finding that the evidence failed to establish the presence of such criteria. (R. 2621.)

Prior to proceeding to step four, the ALJ found that Alexander M. retained the Residual Functional Capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[3] except he can occasionally push, pull, climb ramps and stairs, stoop, crouch, kneel and crawl; he can never reach overhead or climb ladders, ropes or scaffolds; he is limited to simple tasks; can tolerate no more than occasional decision-making and no more than occasional interaction with the public, coworkers or supervisors. (R. 2621.)

[2] The ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). The special technique first requires the ALJ to assess the claimant's degree of functional limitation resulting from a mental impairment in four "broad functional areas" identified in the "paragraph B" of the adult mental disorders listings. *See* 20 C.F.R. § 404.1520a(c)(3). Those four functional areas are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.*

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

At step four, the ALJ found that Alexander M. had no past relevant work. (R. 2635.) At step five, the ALJ considered Alexander M.'s age, education, work experience and RFC through the date last insured and concluded, based on VE Pearson's testimony, that there were jobs existing in significant numbers in the national economy that Alexander M. would have been able to perform, including ticket checker, screener and document preparer. (R. 2636-37.) Therefore, the ALJ found that Alexander M. was not under a disability as defined under the Act at any time from December 25, 2014, the alleged onset date, through December 31, 2020, the date last insured. (R. 2637.)

## LEGAL STANDARDS

### I. Standard Of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

"The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id.*; *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). A court must set aside legally erroneous agency action unless "application of the correct legal principles to the record could lead only to the same conclusion," rendering the errors harmless. *Garcia v. Berryhill*,

No. 17-CV-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018) (quoting *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010)).

Absent legal error, the ALJ's disability determination may be set aside only if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 447-48 (cleaned up). "But it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Id.* at 448 (quoting *See Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original).

## II. <u>Determination Of Disability</u>

A person is considered disabled for benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 [(the "Listings")] . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (internal citations omitted).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The claimant bears the burden of proof as to the first four steps. *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that he cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education, and past relevant work experience. *See id.* at 51-52.

## III. <u>Regulations Regarding Consideration Of Medical Opinions And Prior Administrative Medical Findings</u>

Under the regulations applicable to Plaintiff's claim, the ALJ considers five factors in evaluating the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Using these factors, the most important of which are supportability and consistency, the ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* § 404.1520c(b).

With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). While the ALJ "may, but [is] not required to, explain how [he] considered" the factors of relationship with the claimant, the medical source's specialization, and other factors, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings[.]" *Id.* § 404.1520c(b)(2).

An ALJ must provide sufficient explanation to allow a reviewing court to "trace the path of [the] adjudicator's reasoning[.]" *Amber H. v. Saul*, No. 20-CV-00490 (ATB), 2021 WL 2076219, at *6 (N.D.N.Y. May 24, 2021) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) ("We expect that the articulation requirements in these final rules will allow a . . . reviewing court to trace the path of an adjudicator's reasoning[.]")). An ALJ commits procedural error by failing to explain how he considered the supportability and consistency of medical opinions in the record. *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). A reviewing court still may affirm if "a searching review of the record" assures it "that the substance of the [regulation] was not traversed." *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

## DISCUSSION

Plaintiff argues that the ALJ erred in failing to consider the number of monthly absences and time off-task that Alexander M. would have as a result of his impairments and treatment; the ALJ's RFC determination was not supported by substantial evidence and, therefore, the ALJ failed to include all of Alexander M.'s limitations in his hypothetical to VE Pearson; and the ALJ failed to properly consider the psychiatric expert opinion of Dr. Chang, in addition to Dr. John Miller, as directed by the Appeals Council on remand. (Pl.'s Mem. at 23-34.) In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence. (Comm'r Br. at 11-18.)

### I. Monthly Absences And Time Off Task

Plaintiff first argues that the ALJ erred in failing to consider the number of monthly absences and time off task that Alexander M. would have as a result of his impairments and treatment. (Pl.'s Mem. at 24-28; Pl.'s Reply at 1-3.)

As discussed by Plaintiff, his treating psychiatrist Dr. Chang, as well as psychiatric consultative examiner Dr. John Miller and psychiatric consultant Dr. Brown, each assessed moderate limitations in Alexander M.'s ability to sustain concentration, perform at a consistent pace and maintain regular attendance at work. (Pl.'s Mem. at 25; Pl.'s Reply at 2-3.) Dr. Chang specifically opined that Alexander M. would be absent from work more than three times per month. (R. 2450.) APRN Plageman also opined, in the context of considering Alexander M.'s physical limitations, that he would be absent more than three times per month. (R. 2458.)

The ALJ found Dr. Chang's opinion not persuasive because it was not supported by the record and inconsistent with his treatment records, as Dr. John Miller testified, as well as other

psychiatric treatment notes indicating that Alexander M. "was doing well in school with a desire to graduate and with no reported mental difficulties in obtaining a 3.6 grade point average, aside from difficulty getting along with others that resulted in suspension from school." (R. 2634.) The ALJ found Dr. Brown's opinion "generally persuasive" as it was supported by the record through June 2018, when the opinion was given, and generally consistent with the record. (R. 2634-35.) The ALJ did not articulate how persuasive he found the opinion of Dr. Miller, despite direction from the Appeals Council to do so.

The Commissioner argues that the ALJ's failure to consider Dr. Miller's opinion does not require remand because Dr. Brown's moderate limitations were consistent with the RFC and the moderate limitations assessed by Dr. Brown and Dr. Miller do not support a finding that Alexander M. would be off-task more than 8% of the workday or absent more than once per month. (*See* Comm'r Br. at 13.)

The ALJ does not explain, however, how the undefined "moderate" limitations assessed by Dr. Miller and Dr. Brown supported his implicit determination that Alexander M. would not be absent more than one day per week or off task more than 8% of the time, while rejecting Dr. Chang's more specific opinion, which also was based on an assessment of "moderate" limitations. Thus, the Court agrees with Plaintiff that the ALJ did not adequately explain the basis for this determination. (*See* Pl.'s Reply at 1-2.) In *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60 (2d Cir. 2025), the Second Circuit determined that the ALJ's implicit conclusion that the plaintiff would not be off task more than 10% of the workday or miss more than one day of work per month was not supported by substantial evidence despite the opinion of a psychiatric consultative examiner that the plaintiff was moderately limited in his ability to sustain a routine and regular attendance at

work. *See id.* at 71. There, all of the medical opinions on the subject found at least moderate limitations, with two doctors specifically opining that the plaintiff would be absent at least two days per month. *See id.* The Second Circuit concluded that, because it was not clear what the consultative examiner had in mind in terms of moderate limitations, further clarification was required. *See id.*

Courts considering *Nunez* have declined to read it as overruling "the significant body of case law" finding that moderate limitations can be consistent with a capacity to perform unskilled work. *See Leyla S-H v. Comm'r of Soc. Sec.*, No. 25-CV-03735 (GRJ), 2026 WL 1493379, at *8 (S.D.N.Y. May 28, 2026); *see also Raul G. v. Comm'r of Soc. Sec.*, No. 24-CV-08828 (SDA), 2026 WL 412085, at *14 (S.D.N.Y. Feb. 13, 2026) ("[T]he Second Circuit frequently has rejected arguments that an ALJ's RFC determination must include restrictions regarding attendance or off-task percentage to account for moderate limitations in, *inter alia*, concentration and the ability to sustain regular attendance.") (citing cases). Nonetheless, *Nunez* counsels that, where there is specific evidence that moderate limitations would render a plaintiff unable to work based upon absences or off-task percentages, an ALJ must explain the determination that moderate limitations are consistent with a contrary RFC determination. *Cf. Benjamin v. Comm'r of Soc. Sec.*, 25-2343, 2026 WL 697004, at *2 n.2 (2d Cir. Mar. 12, 2026) (distinguishing *Nunez* and concluding substantial evidence supported no more than moderate limitations where specific findings in record that plaintiff could "sustain a normal workday and work week."); *Marie F. G. v. Comm'r of Soc. Sec.*, No. 25-CV-00416 (NSR) (JCM), 2026 WL 540604, at *15 (S.D.N.Y. Feb. 12, 2026), *report and recommendation adopted*, 2026 WL 1078558 (S.D.N.Y. Apr. 21, 2026) (distinguishing

*Nunez* where no opinion evidence limited the plaintiff's "attendance and routine-maintenance abilities so stringently.")

The Court finds that this case is analogous to *Nunez* since the only medical opinions to specifically address the likelihood of absence from work concluded that Alexander M. would miss more than three days per month and there is no indication of what Dr. Brown meant by moderate limitations to support the ALJ's implicit determination that moderate limitations would not result in more than one absence per month or more than 8% time off-task. Nor are there other findings in the record that, despite moderate limitations, Alexander M. could sustain an ordinary routine and attendance at work. Thus, even though the ALJ was not required to credit the opinions of Dr. Chang and APRN Plageman regarding monthly absences, he was required to provide an explanation on how he reached his determination. *See Faure v. Comm'r of Soc. Sec.*, 685 F. Supp. 3d 247, 266 (S.D.N.Y. 2023) (citing *Stellmaszyk v. Berryhill*, No. 16-CV-09609 (DF), 2018 WL 4997515, at *28 (S.D.N.Y. Sept. 28, 2018) (finding ALJ erred and remand was appropriate where it was unclear how ALJ incorporated plaintiff's moderate limitations in determining plaintiff's RFC)).

Accordingly, the Court finds that remand is required for the ALJ to reconsider his assessment of Alexander M.'s absenteeism and time off task. On remand, the ALJ also shall articulate how persuasive he finds Dr. Brown's opinion. *See* 20 C.F.R. § 404.1520c(b).

## II. <u>Plaintiff's Remaining Arguments</u>

Because the Court finds that remand is required based on the ALJ's assessment of Alexander M.'s absenteeism and time off task, and to consider the persuasiveness of Dr. Brown's opinion, the Court does not consider Plaintiff's remaining arguments.

## III. Nature Of Remand

Plaintiff asserts that the decision of the Commissioner should be reversed or remanded for further determinations. (Pl.'s Mem. at 1, 35.) The Court finds that remand for further administrative proceedings is appropriate. Plaintiff does not meaningfully argue that this is "the rare case" where a remand for the payment of benefits would be appropriate. *See Jerry B. v. Bisignano*, No. 24-CV-06435 (SDA), 2026 WL 1587384, at *10 (S.D.N.Y. June 3, 2026) (remanding for further proceedings when evidence in record did not "unequivocally support a finding of disability").

## CONCLUSION

For the reasons stated above, Plaintiff's motion is GRANTED, the Commissioner's decision is reversed and this action is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. The Clerk of Court is respectfully directed to enter judgment and close this case.

Dated: New York, New York
August 27, 2026

Stewart d. Aaron
______________________________
STEWART D. AARON
United States Magistrate Judge